## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CRAMER,** | : | |
| **Plaintiff,** | : | **Civ. No. 1:22-CV-583** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **J. BOHINSKI, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION

### I.   Factual Background

The plaintiff, William Cramer, filed this action *pro se* against correctional staff at the State Correctional Institution Dallas ("SCI Dallas"). (Doc. 37, ¶¶ 1-3.) The plaintiff alleged that he was effectively denied access to the law library because of barriers to access to the legal material as a result of the request system utilized by the prison. Cramer further claimed this alleged lack of access to legal materials was retaliatory and a denial of his Due Process rights. Accordingly, he brings this action pursuant to 42 U.S.C. § 1983, asserting that the defendants violated his constitutional rights.

Cramer was transferred from SCI Forest to SCI Dallas on November 9, 2021. (Doc. 37, ¶ 14). After his transfer, The defendants composed The plaintiff's Plan of Action ("POA"), which enumerated his privileges while incarcerated at SCI Dallas.

(Id., ¶ 15). The plaintiff contends that his POA included physical access to the law library. (Id., ¶ 16). Shortly after his transfer, Cramer submitted a DC-135A form requesting access to the law library, following the established procedures. (Id., ¶ 17). His first written request to access the law library was submitted on November 19, 2021. (Doc. 41, at 2). Lieutenant Boyle—who is not named as a defendant in this action—responded to Cramer's request writing: "Per [Program Review Committee], All requested materials need to be written to the library. Copies will be sent to the [Restricted Housing Unit] for you. You will not be charged for these copies." (Doc. 37, ¶ 18).

The plaintiff's thirty-day review took place on December 1, 2021. (Doc. 37, ¶ 19). During the Program Review Committee's ("PRC") review of Cramer, he asked the defendants why he was not allowed access to the law library. (Id.) Cramer alleges that Defendant Innis responded, "PRC has decided that you'll never be allowed to use the law library because we know that you like to sue." (Id., ¶ 20.) After Cramer began to protest Defendant Innis' remark, he alleges that Defendant DePiero then laughed and stated, "You brought this upon yourself with filing lawsuits. We here at SCI Dallas don't give a f*** [sic] about your so-called constitutional rights, so protest all you want." (Id., ¶ 21.)  Before leaving the plaintiff's cell, Defendant Contreras allegedly said, "Take it on the chin, Mr. Cramer, and go about your business before we make your life a living hell." (Id., ¶ 22.)

As a result of the plaintiff's alleged inability to physically access the law library, he asserts that he was unable to conduct legal research in a manner adequate to file a motion to reopen discovery in a *pro se* civil rights action. (Id., ¶ 23.) This action is docketed at 1:19-cv-83. (Id., ¶ 17). The plaintiff pleads no specific facts about the separate action in his amended complaint. (Doc. 41, at 2 n.1). In addition to a civil claim, the plaintiff suggests that his Post-Conviction Relief Act ("PCRA") counsel was permitted to withdraw, and his petition for post-conviction relief was dismissed on February 1, 2022 regarding a criminal matter in Cambria County.[1] (Doc. 41, 3.) Cramer alleges that he was unable to show cause as to why counsel should not be permitted to withdraw without using the law library and conducting the requisite legal research. (Id.) Cramer contends that prior to his PCRA counsel's withdrawal, a second PRC review took place at the prison during which he informed Defendant Bohinski about his need to access the law library in order to research a showing of cause. (Doc. 37, ¶¶ 31-32.) Defendant Bohinski allegedly told the plaintiff to "deal with it." (Id., ¶ 33.)

The plaintiff again attempted to access the law library on April 6, 2022. The plaintiff alleges that while Defendants Innis, Contreras, and DePiero made a weekly

---

[1] Cramer's criminal matter is docketed at CP-11-CR-0002128-2012 in the Cambria County Court of Common Pleas. The docket reflects that Cramer's PCRA counsel filed a motion to withdraw on November 1, 2021, and his petition was ultimately dismissed on February 1, 2022.

PRC round, he requested access to the law library once more. (<u>Id.</u>, ¶ 36.) Defendant Innis purportedly responded to his request by saying, "What did PRC tell you several months ago, Mr. Cramer? [You're] not getting the law library because we know you like to sue." (<u>Id.</u>, ¶ 38.)

Thus, Cramer filed this action on April 22, 2022. (Doc. 1). The defendants then filed a motion to dismiss the complaint. (Doc. 24). Cramer, in response, amended his complaint, which is currently the operative pleading. (Doc 37). The defendants subsequently filed the instant motion to dismiss Cramer's amended complaint. (Doc. 40). In support of their motion, the defendants argue that the plaintiff has not alleged a valid denial of access to the courts claim because he had the ability to request materials from the law library. (Doc. 41, at 7). They also argue that the plaintiff has not alleged enough facts regarding the nonfrivolous nature of the lost claim in order to survive the motion to dismiss this access to courts claim. (<u>Id.</u>, at 6). Alternatively, The defendants assert that they are entitled to qualified immunity because the rights allegedly violated were not clearly established at the time of the violation. (<u>Id.</u>) With respect to the retaliation claim, the defendants argue that Cramer retained the ability to request materials from the law library, and as such, he has not suffered an adverse action sufficient to establish retaliation. Finally, The defendants argue that the more-specific-provision rule bars the plaintiff's Due Process claim. (<u>Id.</u>, at 11).

After consideration, and for the reasons set forth below, we will grant the defendants' motion as to the Due Process and access to courts claims, but deny the motion as to the retaliation claim.

## II.  Discussion

### A.  Motion to Dismiss - Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.---, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a the plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . the plaintiff can prove facts that the . . . the plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." (Id., at 555.) "Factual allegations must be enough to raise a right to relief above the speculative level." (Id.)

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when dismissing a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." (Id., at 679.)

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by the mere conclusory statements, do not suffice." (Id., at 678.)

Rather in conducting a view of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

(Id., at 679.)

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more

than mere legal labels and conclusions; it must recite factual allegations sufficient to

raise the plaintiff's claimed right to relief beyond the level of mere speculation. As

the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

    As the Court of Appeals has observed:

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that the defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" the defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1861 (2012).

    In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements the plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." (<u>Id.</u>, at 1950.) Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]" that the defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, when presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003); Youse v.

Carlucci, 867 F.Supp. 317, 318 (E.D.Pa.1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

## B. The Defendants' Motion to Dismiss will be Granted in Part and Denied in Part.

As we have explained, the plaintiff asserts three claims against the defendants—a Due Process claim, a denial of access to the courts claim, and a First Amendment retaliation claim. After a review of Cramer's amended complaint, we agree with the defendants that the more-specific provision rule bars the Fourteenth Amendment Due Process claim. Additionally, we are constrained by recent Third Circuit precedent to find that the defendants are entitled to qualified immunity with respect to Cramer's access-to-courts claim based upon his civil case, and that the access-to-courts claim based on his criminal case fails as a matter of law. However, we conclude that Cramer has set forth sufficient allegations as to his First Amendment retaliation claim. Accordingly, we will grant the motion as to the Due Process and access-to-courts claim, but we will deny the motion as to the retaliation claim.

### 1. **Due Process Claim**

At the outset, Cramer brings a general Fourteenth Amendment Due Process claim, which appears to be based on the same facts underlying his more specific First Amendment claims. Thus, this claim is barred by the "more specific provision" rule.

The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, and property without due process of law. U.S. Cons. amend. XIV. However, the more specific provision rule informs us that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

The plaintiff's Due Process claim arises from the very same conduct upon which he bases both his retaliation and denial of access to the courts claims, which fall under the First Amendment's protections. In such instances, the more specific First Amendment claims control, and the general due process claim should be dismissed. See Hitner v. Alshefski, 2020 WL 3288157, at *2 (M.D. Pa. 2020) (denying Fourteenth Amendment Due Process claim based on allegations of First Amendment access-to-courts and retaliation). Accordingly, we will grant the motion to dismiss as to Cramer's Due Process claim.

## 2.  Denial of Access to Courts Claim

The plaintiff also asserts a First Amendment claim of denial of access to the courts against Defendants Bohinski, Contreras, Goyne, Innis, and DePiero. He asserts that the paging system that was available to him was not adequate to perform the research he needed for his civil and criminal cases, and therefore, he was unable to pursue certain actions in those cases. As we will discuss, the Third Circuit recently held that prior to its decision in Rivera v. Monko, 37 F.4th 909, 913 (3d Cir. 2022), a prisoner's right to law library or legal assistance at all stages of civil rights proceedings was not clearly established. Accordingly, with respect to Cramer's claim arising out of his civil case, we will grant the motion to dismiss based on qualified immunity grounds. In addition, we conclude that Cramer's access-to-courts claim based on his criminal post-conviction litigation also fails as a matter of law given settled case law, as Cramer has failed to set forth facts establishing that he had a potentially meritorious underlying legal claim, a prerequisite to a constitutional claim in this setting.

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when

they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1)

whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), overruled in part by <u>Pearson</u>, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." <u>Mullenix</u>, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (quoting <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting <u>Al-Kidd</u>, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." <u>Id.</u> (quoting <u>Al-Kidd</u>, 563 U.S. at 742).

On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. <u>See Davis v. Scherer</u>, 468 U.S. 183, 197 (1984) ("A the plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's

qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a the defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

With respect to whether Cramer has sufficiently pleaded a constitutional violation, we turn to the requirements of an access-to-courts claim. A prisoner's ability to bring a claim to the court's attention is a decidedly important interest.

Indeed, even the Supreme Court has articulated that "prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). This right of access to the courts enumerated by the Supreme Court, however, is not inherently coupled with "an abstract, freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 14 (1996). Rather, "meaningful access" to the courts is the controlling determination for whether a prisoner's right to access the courts has been satisfied. Bounds, 439 U.S. at 823. While there is no constitutional mandate that provides said freestanding right to accessing a law library, Bounds does instruct that the right of access to the courts requires that prisoners receive "adequate law libraries . . ." Id. at 828.

Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action. Rivera v. Monko, 37 F.4th 909, 915 (3rd Cir. 2022) (citing Monroe v. Beard, 536 F.3d 198, 205 (3rd Cir. 2008)). Most significant is the nonfrivolous nature of the claim allegedly lost. The lost claim must be "more than hope" in order to be deemed nonfrivolous. Christopher v. Harbury, 536 U.S. 403, 416 (2002).

Analysis of the lost claim hinges on its nonfrivolous nature, as well as whether it falls into the two categories of claims which enjoy explicit protection. The two

categories of protected claims are articulated as forward- and backward-looking claims. Christopher, 562 U.S. at 413-15. A lost forward-looking claim describes a situation where a prison official "frustrates a plaintiff . . . in preparing and filing suits at the present time." Id. at 413. A lost backward-looking claim, on the other hand, speaks to when a specific claim can no longer be litigated "no matter what official action may be in the future." Id. at 414.

The plaintiff contends that his access to the law library was not "meaningful" because the paging request system is ineffective for legal research. Thus, he asserts a page request system is inadequate. Recently, the Third Circuit held that because we recognize a constitutional right to access the courts, "it is ludicrous to hold that the right of access stops once [a] complaint has been filed." Rivera v. Monko, 37 F.4th 909, 915 (3d Cir. 2022). "A prisoner states an access-to-courts claim when he alleges that even though he successfully got into court by filing a complaint . . ., his denial of access to legal materials caused a potentially meritorious claim to fail." Id. (quoting Marshall v. Knight, 445 F.3d 965, 969 (7th Cir. 2006)). The ability to access basic legal research materials "does not stop once a prisoner has taken the first step towards the courthouse's door." Id. at 913. Thus, it is now clear under Third Circuit precedent that the right of access to the courts is an on-going rights the extends throughout the course of litigation. Yet this determination, standing alone, is not sufficient to allow Cramer's claim to proceed forward. It must also be shown that

this right was clearly established at the time of the events alleged in the complaint, in 2021 and early 2022.

Cramer's access-to-courts claim fails, in part, on these qualified immunity grounds. In the instant case, Cramer's access-to-courts claim asserts that he was denied adequate legal research opportunities which led to the loss of claims in two cases—a civil rights case and a criminal case. With respect to his civil case, Cramer alleges that he was unable to file a motion to reopen discovery due to the lack of access to legal research materials at the institution. On this score, we need not determine whether Cramer has alleged a viable access-to-courts claim because the Third Circuit held in June of 2022 that "existing Supreme Court and Third Circuit Court of Appeals law had not clearly established a prisoner's right to access the courts after he or she filed a complaint." Rivera, 37 F.4th, at 913. Accordingly, given that Cramer's claims occurred prior to the decision in Rivera, we are bound by this Third Circuit ruling and conclude that Cramer's right to access the courts during all stages of his civil rights case was not clearly established at the time of the alleged infractions. Accordingly, the defendants are entitled to qualified immunity with respect to this claim.

With respect to Cramer's claim that he was denied access to the courts in his criminal case, Cramer contends that he was denied access to the law library, and that he was unable to show cause as to why his PCRA counsel should not withdraw. He

asserts that his PCRA petition was subsequently dismissed. Cramer's amended complaint alleges that he informed Defendant Bohinski of the situation in December of 2021 at his PRC, and that Bohinski told him to "deal with it." On this score, even if we were to find that the right of access to law library or legal assistance in a criminal PCRA setting was clearly established, Cramer fails to assert a constitutional violation for one reason.

As we have explained, the first critical element of an access-to-courts claim requires a plaintiff to show that he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim." Rivera, 37 F.4th at 915. As one court in this circuit has aptly noted, "[b]ecause [] untimely PCRA petitions, over which the State Courts lack jurisdiction, simply are not 'non-frivolous' within the contemplation of Christopher, the plaintiff's denial of access to courts claim fails as a matter of law." Caldwell v. Folino, 2009 WL 3082524, at *15 (W.D. Pa. June 10, 2009) (finding that the plaintiff's untimely PCRA petition was frivolous, and therefore, the plaintiff showed no injury to sustain his access-to-courts claim). Here, Cramer's criminal docket in Cambria County indicates that his PCRA petition was dismissed as untimely.[2] Thus, since this claim was deemed time-barred, we cannot conclude that Cramer has pleaded sufficient facts to establish that he lost the opportunity to pursue

---

[2] The Third Circuit has held that "criminal case dispositions" are properly considered as "public records" for purposes of a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993).

a nonfrivolous claim and suffered an injury resulting in a First Amendment violation. Accordingly, we will grant the defendants' motion and dismiss the plaintiff's access-to-courts claim.

### 3.  <u>Retaliation Claims</u>

Finally, we conclude that Cramer has pleaded sufficient facts in his amended complaint to state a claim for First Amendment retaliation. The plaintiff bases his assertion on his well-pleaded allegations that he was retaliated against by Defendants Goyne, Innis, and DePiero when he was allegedly denied access to the law library because he filed lawsuits. Prevailing on a retaliation claim requires that the plaintiff shows (1) he was engaged in constitutionally protected activity, (2) adverse action sufficient to deter a person of ordinary firmness from exercising their constitutional rights was taken against him by a prison official, and (3) that there existed a causal link between the constitutionally protected activity and the retaliatory action. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3rd Cir. 2001) (citations omitted). The burden of showing that the constitutionally protected activity was a "substantial or motivating factor" in the decision to employ discipline falls on the plaintiff, and the burden then shifts to the defendants to show upon preponderance of the evidence that they would have engaged in the same disciplinary action absent the constitutionally protected activity. <u>Rauser </u>at 330.

In the instant case, with our judgment cabined and confined to the well-pleaded facts in the amended complaint, we find that Cramer has alleged sufficient facts to state a colorable claim that the defendants retaliated against him for exercising his First Amendment rights. First, it is undisputed that filing lawsuits is a constitutionally protected activity. See Williams v. Klem, 2008 WL 4453100, at *4 (M.D. Pa. Sept. 30, 2008) (citing Anderson v. Davila, 125 F.3d 1481 161 (3d Cir. 1997); Millhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981)). The plaintiff's activity was clearly constitutionally protected, and he provides details of his legal endeavors in his complaint, such as his civil rights case and his PCRA litigation in state court. Such actions would be constitutionally protected activity and clearly meet the first requirement of his retaliation claim.

Additionally, we find that Cramer has sufficiently pleaded facts to show that he suffered an adverse action. The defendants argue that because of the page request system that was offered to Cramer, he did, in fact, have access to the library and thus, he did not suffer an adverse action. However, the question of whether the page request system is adequate requires us to foray beyond the pleadings, for no facts about the specificities of the request system have been described. As alleged in the amended complaint, Cramer posits that he was unable to conduct legal research for his civil and criminal cases, as he was unable to physically go to the law library. He further alleges that the page request system did not allow him to conduct legal

research for his cases, as he would not be able to request certain material be provided to him if he was unable to conduct research to gauge the materials he needed. Thus, he contends that the paging system was inadequate and did not afford him meaningful access to the law library. These allegations, taken as true, support Cramer's claim of an adverse action.[3]

Finally, we conclude that Cramer's amended complaint sets forth sufficient facts from which we could infer a causal connection between the protected activity and the alleged adverse action. When assessing a causal connection between the constitutionally protected activity and the retaliatory action, the plaintiff bears the burden of showing that their constitutionally protected activity was "a substantial or motivating factor" in the decision to discipline him. Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977). Upon this showing, the burden then shifts to the defendant to prove on preponderance of the evidence that it would have taken the same disciplinary action even absent the constitutionally protected activity. Id.

---

[3] While the defendants argue this retaliation claim fails because Cramer was not denied access to the courts, we view Cramer's access-to-courts and retaliation claims separately. Particularly in this case, we have not concluded that Cramer's access-to-courts claim with respect to his civil case fails on its merits; rather, we are granting qualified immunity on the grounds that Cramer's right to access to legal assistance in this setting was not clearly established at the time of the alleged incident in this case. Accordingly, we believe that our dismissal of that access-to-courts claim on qualified immunity grounds does not compel the dismissal of Cramer's retaliation claim.

Cramer alleges that numerous defendants at various times made statements that implicate his ability to access the law library. Among these statements allegedly attributed to the defendants are phrases attributing the denial of the plaintiff's access to the law library to the fact that the defendants "know [he likes] to sue." The specific nature of the defendants' alleged references to the plaintiff's litigation when they allegedly curtailed his attempts to utilize the law library are sufficient to show at this stage some causal connection here. Moreover, the defendants assert no argument that they would have engaged in the same disciplinary action absent the constitutionally protected activity. Because of this, we will deny the defendants' motion to dismiss the retaliation claim.[4]

## III. **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss (Doc. 40) is GRANTED IN PART as to the due process and access to courts claims, and DENIED IN PART as to the retaliation claim.

---

[4] Cramer asserts a claim for compensatory damages in his amended complaint. (See Doc. 37). However, absent any proof of physical injury, the Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"), would bar compensatory damages. Carey v. Piphus, 435 U.S. 247, 264 (1978); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Accordingly, because Cramer has failed to allege any physical injury with respect to the remaining First Amendment retaliation claim, any request for compensatory damages is barred by the PLRA.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 6, 2023