**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM CRAMER,** | : | **Civil No. 1:22-CV-583** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **J. BOHINSKI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

## I.  Factual and Procedural Background

This case comes before us for resolution of a motion to compel. (Doc. 66). By way of background the plaintiff, William Cramer, is an inmate in the custody of the Pennsylvania Department of Corrections. In his complaint, Cramer alleges that he has been subjected to acts of unlawful retaliation by prison officials at the State Correctional Institution (SCI) Dallas due to his prior litigation activities.

Cramer also allegedly has a singular, and singularly troubling, status within the Department of Corrections. He is regarded as the most dangerous inmate in state custody, a distinction that Cramer has earned through an institutional history marked by 320 misconduct citations. (Doc. 73-1 ¶ 7). This unrelenting misconduct history is also deeply troubling in one other respect: 63 of Cramer's misconducts have involved assaultive violence, and it is alleged that Cramer has attempted to kill prison staff on at least four occasions. (Id.) Moreover, a number of these staff attacks

have entailed a disturbing element of calculation by Cramer who has fashioned and secreted weapons which he has then used to harm correctional and medical staff. (Id.)

It is against this backdrop that Cramer has filed a motion to compel which seeks two categories of information. First, in his motion Cramer seeks an order compelling prison officials to provide him with the following information concerning third party grievances lodged against the defendants:

> Any and all grievances, complaints or otherwise documents submitted by prisoners at SCI-Dallas concerning retaliation by Defendants Bohinski, Conteras, Goyne, Innis, and Depiero, and memoranda, investigative files or other documents created in response to such complaints since January 1, 2021, until the date of your response.

In addition, Cramer has sought the disclosure of various documents which directly implicate the unique and uniquely compelling security concerns which this violent recidivist presents. Specifically, Cramer has demanded the production of:

> [T]he plan of action ("P.O.A.") that the Defendant's initiated on or about November 9, 2021, upon the plaintiff's arrival at SCI-Dallas.

As well as:

> [A]ll DC-709 restriction forms, written reports, DC-709's, P.O.A's that SCI-Dallas and the Defendants initiated on or about Nov. 9., 2021 until April 21, 2022.

The defendants have objected to these discovery requests, noting that the release of third-party grievances violate prison privacy policies. The defendants further explain that Cramer's demand for production of DC-709s and POAs raise

grave security concerns since these forms outline the perceived security risks presented by specific prisoners as well as detailing the security precautions approved and employed with respect to particular inmates. (Doc. 73-1 ¶¶ 18, 19). Given Cramer's longstanding history of calculated and unrelenting violence targeting staff and others the defendants object to releasing these highly sensitive details of their security planning to this particularly dangerous inmate.

This motion to compel is fully briefed and is, therefore, ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, we will DENY this motion to compel.

## II.    **Discussion**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United

<u>States</u>, 943 F. Supp. 501, 502 (E.D. Pa. 1996)).  Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion."  <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J. 1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is

relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although 'the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.' Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information") (internal citations omitted)).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether

the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Further, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information relating to security procedures can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering: ı

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending

or reasonably likely to follow from the incident in question; (6) whether
the police investigation has been completed; (7) whether any intra-
departmental disciplinary proceedings have arisen or may arise from
the investigation; (8) whether the plaintiff's suit is non-frivolous and
brought in good faith; (9) whether the information sought is available
through other discovery or from other sources; and (10) the importance
of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *3–4 (M.D. Pa. Jan. 18,
2019).

Finally, in considering this motion we are mindful that the party moving to
compel discovery bears the initial burden of proving the relevance of the requested
information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa.
2001). Once that initial burden is met, "the party resisting the discovery has the
burden to establish the lack of relevance by demonstrating that the requested
discovery (1) does not come within the broad scope of relevance as defined under
Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm
occasioned by discovery would outweigh the ordinary presumption in favor of broad
disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

In this case, Cramer's motion to compel seeks two categories of information.
At the outset, Cramer demands that prison official to provide him with the following
information concerning third party grievances lodged against the defendants:

Any and all grievances, complaints or otherwise documents submitted
by prisoners at SCI-Dallas concerning retaliation by Defendants

Bohinski, Conteras, Goyne, Innis, and Depiero, and memoranda, investigative files or other documents created in response to such complaints since January 1, 2021, until the date of your response.

With one narrow exception, this request will be denied since:

These are precisely the kinds of sweeping, generalized and overly broad discovery requests judges in the Middle District of Pennsylvania have rejected as being not only overly broad, but unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with staff. See, e.g., Montanez v. Tritt, Civ. No. 3:14-CV-1362, 2016 WL 3035310, at *4 (M.D. Pa. May 26, 2016) (denying motion to compel production of incident reports, grievances and other documents involving other inmates where they were found to be "overly broad, irrelevant, confidential, [and to] bear no sufficient connection to this case, and raise obvious privacy and security issues.") (Mariani, J.); Lofton v. Wetzel, Civ. No. 1:12-CV-1133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 9, 2015) (Conner, C.J.) ("It is apparent that [the plaintiff's] requests for 'any and all' records of inspection, and 'all' incident reports and grievances are a grossly overstated fishing expedition. [His] request for incident reports and grievances regarding other inmates raises obvious privacy and security issues, and the relevance of such information is questionable at best."); Sloan v. Murray, No. 3:11-CV-994, 2013 WL 5551162, at *4 (M.D. Pa. Oct. 8, 2013) (Caputo, J.) (denying motion to compel grievance responses that concerned other inmates, citing DOC policy prohibiting inmates from receiving information about one another); Torres v. Clark, Civ. No. 1:10-CV-1323, 2011 WL 4898168, at *2-3 (M.D. Pa. Oct. 13, 2011) (Caldwell, J.) (denying motion to compel inmate request for discovery of 27-months of grievances about a specific cell block, finding it to be overly broad, burdensome, and potentially implicating privacy interests of other inmates); McDowell v. Litz, Civ. No. 1:CV-08-1453, 2009 WL 2058712, at *3 (M.D. Pa. July 10, 2009) (Rambo, J.) (finding requests for discovery of grievances filed by non-party inmates to be "overbroad and overly burdensome" and agreeing with the defendants' "concerns about accessing private information with respect to other inmates' grievances."); Callaham v. Mataloni, Civ. No. 4:CV-06-1109, 2009 WL 1363368, at *3-4 (M.D. Pa. May 14, 2009) (Jones, J.) (denying motion to compel, inter alia, grievances relating to medical treatment of other inmates, citing privacy concerns); cf. Banks

v. Beard, Civ. No. 3:CV-10-1480, 2013 WL 3773837, at *5 (M.D. Pa. July 17, 2013) (Munley, J.) (denying motion to compel account statements for other inmates despite plaintiff's claim of relevance).

Allen v. Eckard, No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019).

Therefore, to the extent that Cramer seeks wholesale disclosure of any and all inmate retaliation grievances, this motion to compel is denied. However, if a grievance review reveals a *finding* of unlawful retaliation against a prisoner by any of the named defendants during the pertinent time period, that information will be provided to the court for its *in camera* review. We will follow this course recognizing that this narrow class of prison records may contain arguably discoverable factual material. In charting this path, we reconcile the interests of inmate-plaintiff and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06–1751, 2007 WL 4375937, *4–5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06–175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008). See Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *5 (M.D. Pa. Jan. 18, 2019).

As for Cramer's requests for disclosure of highly sensitive security procedures and guidelines like POAs and DC-709 forms, we note that the DC-709 forms are derived from, and based upon, the Department of Corrections Security Manual

Section 6.5.1.  Inmate access to these sensitive security procedures presents a grave

threat to institutional security. Accordingly,

> [N]umerous federal courts in Pennsylvania have sustained the
> Department of Corrections' objections to wholesale release of the
> procedures manual to policy 6.5.1 and 6.3.1, and have denied
> substantially similar motions to compel filed by other inmates. See,
> e.g., Houser v. Pa. Dep't of Corr., Civ. A. 13-cv-1068, 2015 U.S. Dist.
> LEXIS 21254, at *11-12, 2015 WL 757552 (W.D. Pa. Feb. 23, 2015)
> (finding that to permit inmate access to 6.5.1's confidential internal
> working procedures for staff dealing with Security Level 5 RHU
> inmates would create a "substantial security risk"); Whitney v. Wetzel,
> Civ. A. No. 2:12-cv-1623, 2014 U.S. Dist. LEXIS 155226, at *4-5,
> 2013 WL 5513481 (W.D. Pa. Oct. 31, 2014); Whitney v. Wetzel, Civ.
> A. No. 2:12-cv-1623, 2014 U.S. Dist. LEXIS 155226, at *4-5, 2013
> WL 5513481 (W.D. Pa. Oct. 31, 2014) (finding that policy 6.5.1 "is a
> privileged and confidential document that addresses the administration
> of Security Level 5 Housing Units."); Spencer v. Collins, 2013 WL
> 5176747, at *2 (M.D. Pa. Sept. 12, 2013) (finding defendants' safety
> and security concerns about releasing the 6.5.1 manual outweighed the
> plaintiff's interest in its production); Mikell v. Moore, 2013 U.S. Dist.
> LEXIS 29675, at *22-24 (M.D. Pa. Mar. 5, 2013) (refusing to compel
> production of sections of 6.3.1 and 6.5.1 relating to double celling
> inmates); Huertas v. Beard, No. 101-, 2012 U.S. Dist. LEXIS 105631,
> 2012 WL 3096430, at *3 (W.D. Pa. July 30, 2012); Bailey v.
> McMahon, No.1:CV-07-2238, 2012 U.S. Dist. LEXIS 52211, 2012
> WL 1246147, at *7 (M.D. Pa. Apr. 12, 2012) (denying motion to
> compel production of DC-ADM 6.5.1, agreeing with Department of
> Corrections' assertion that its interest in confidentiality and institutional
> security outweighed plaintiff's interest in reviewing the manuals);
> Victor v Lawler, Civ. A. No. 3:08-CV-1374, 2011 U.S. Dist. LEXIS
> 53133, 2011 WL 1884616 (M.D. Pa. May 18, 2011) ("[We find that
> release of policy manuals [6.3.1 and 6.5.1] themselves would
> undermine institutional security.").

Mercaldo v. Wetzel, No. 1:13-CV-1139, 2016 WL 5851958, at *3 (M.D. Pa. Oct. 6,

2016).

These security concerns apply with particular force here, where the inmate seeking access to this highly sensitive security information is widely regarded as the most dangerous prisoner in the state corrections system, and has a history marked by relentless, calculated lethal violence directed against others. Given the uniquely compelling security concerns which Cramer's history of violence presents, this request for access to highly sensitive security information will be denied.

An appropriate order follows.


/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge


DATED: July 26, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM CRAMER,** | : | **Civil No. 1:22-CV-583** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **J. BOHINSKI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this 26th day of July 2023, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's motion to compel (Doc. 66) is DENIED, with one exception: if an inmate grievance review reveals a *finding* of unlawful retaliation against a prisoner by any of the named defendants during the pertinent time period covered by this complaint, that information will be provided to the court for its *in camera* review.

<u>*/s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge