IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CRAMER, | : | Civ. No. 1:22-CV-583 |
| Plaintiff, | : | |
| v. | : | |
| | : | (Magistrate Judge Bloom) |
| J. BOHINSKI, et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

I. Introduction

This case comes before us for consideration of a motion for summary judgment filed by the defendants—Bohinski, Contreras, Depiero, Goyne, and Innis. (Doc. 92). The plaintiff, William Cramer, a Pennsylvania Department of Corrections ("DOC") inmate, filed this lawsuit against these correctional defendants, alleging claims pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). His remaining claim against the defendants is a claim of First Amendment retaliation for exercising his right to file lawsuits. (Docs. 37, 49-50).

The defendants have now filed the instant motion for summary judgment, arguing that Cramer failed to establish a violation of his First Amendment rights. (Doc. 92). After consideration, we conclude that there

are no genuine issues of material fact with respect to Cramer's First Amendment claim. Accordingly, we will grant the motion for summary judgment.

## II. Background[1]

William Cramer is an inmate currently incarcerated at the State Correctional Institution at Dallas within the Pennsylvania DOC. Prior to being housed at SCI Dallas, Cramer was incarcerated at SCI Forest, where he assaulted a correctional officer with a homemade weapon. The misconduct report of the incident indicates that Cramer assaulted the officer while being escorted through the prison, and the officer suffered injuries and had to be taken for medical treatment outside of the facility. Upon his arrival at SCI Dallas following this incident, the DOC implemented a Plan of Action "(POA)", which is a security memorandum detailing the plaintiff's security risks and precautions that must be taken for staff safety, along with the plaintiff's privileges.[2]

---

[1] The background of this Memorandum Opinion is taken from the parties' submissions to the extent those submissions are consistent with the evidence of record. (Docs. 37, 92-94, 97-100).

[2] The record in this case indicates that Cramer has an extensive misconduct history in the DOC, which includes over 300 misconducts and multiple assaults on correctional staff. (*See* Doc. 73-1, Attach. 1, at 17-65).

Cramer asserts that his POA included physical access to the law library in the Restricted Housing Unit ("RHU"). However, when he requested access to the law library, he was informed that he would have to request copies of the materials he needed from the RHU lieutenant, who would provide him with the copies. After a meeting with the Program Review Committee ("PRC") in December of 2021, Cramer inquired as to why he was not allowed access to the law library. He claims that Defendant Innis told him that he would never have access to the law library because "we know that you like to sue." He further alleges in his amended complaint that Defendants Contreras and Goyne also made comments about him being litigious.

Cramer filed an inmate grievance through the DOC's grievance system, claiming that he was being denied access to the law library, which was hindering him from active civil and criminal litigation, and requested that he be granted physical access to the RHU's law library. Cramer's grievance was initially denied by Defendant Bohinski, who informed Cramer that due to his most recent assault on a staff member, he was not permitted physical access to the library but instead had to use the alternative method of requesting materials through the RHU

3

lieutenant, who would get the materials from the institution's librarians and provide them to Cramer. Cramer appealed this grievance to final review, which was ultimately denied on the basis that Cramer was not being denied access to legal materials as he had alleged.

Cramer then filed the instant suit against the defendants, and subsequently filed an amended complaint, which is currently the operative pleading. (Docs. 1, 37). In his amended complaint, Cramer brought his claims pursuant to § 1983, alleging that the defendants violated his First Amendment rights by retaliating against him and denying him access to the courts, as well as a due process claim. (Doc. 37). After the defendants filed a motion to dismiss the amended complaint, the Court dismissed Cramer's access-to-courts and due process claims but permitted the retaliation claim to proceed. (Docs. 49-50).

The defendants have now filed a motion for summary judgment, arguing that Cramer cannot establish a genuine issue of material fact with respect to his retaliation claim. (Doc. 92). For their part, they assert that Cramer cannot show that he was subjected to an adverse action, that he cannot show a causal connection between the filing of lawsuits and

any adverse action, and that they would have taken the same action regardless of Cramer's protected activity. They further argue that Cramer's claims for monetary damages are barred because he failed to exhaust any claim for monetary damages.

This motion is fully briefed and is ripe for resolution. (Docs. 94, 97, 100). After consideration, we conclude that Cramer's retaliation claim fails as a matter of law, and we will grant the defendants' motion for summary judgment.

## III. Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will

preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

B. <u>The Defendants' Motion for Summary Judgment will be Granted.</u>

As we have noted, Cramer's remaining claim is one of First Amendment retaliation against the individual correctional defendants. He contends that these defendants denied him access to the law library because he filed lawsuits. For their part, the defendants argue that Cramer has failed to exhaust any claim for monetary damages, and further, that his retaliation claim fails. After consideration, we agree, and we will grant the defendants' motion for summary judgment.

    1. <u>Cramer Failed to Exhaust his Claim for Monetary Damages.</u>

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to present their claims through a prison's administrative process prior to bringing claims in federal court. 42 U.S.C. § 1997e(a). This applies to any claim arising in the prison setting, regardless of the relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The PLRA's exhaustion requirement is mandatory, provided that administrative remedies are available to the prisoner. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000); 42 U.S.C. § 1997e(a). A failure to exhaust available administrative

remedies bars an inmate from bringing a suit in federal court. *Ghana v. Holland*, 226 F.3d 175, 184 (3d Cir. 2000).

The PLRA requires "proper exhaustion" of administrative remedies, meaning that the inmate must comply with the procedural requirements of the prison's grievance system. *Woodford v. Ngo*, 548 U.S. 81, 84, 90 (2006). In the Pennsylvania DOC, inmates must follow the three-tiered grievance process set forth in DC-ADM 804. *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). Thus, an inmate must begin by filing a grievance with the Facility Grievance Coordinator at the institution where the incident took place. The grievance must contain a statement of facts giving rise to the grievance, identify individuals involved, state claims the inmate wishes to make regarding any violations of DOC policy or the law, and request the specific relief sought. If the grievance is denied at initial review, the inmate may then appeal to the Facility Manager, *i.e.*, the Superintendent of the facility. If the initial response is upheld, the inmate may file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days of the Facility Manager's decision. *See* DC-ADM 804 (Doc. 93-4 at 4-23).

DC-ADM 804 specifically mandates that an inmate seeking monetary compensation "must request the specific relief sought in his/her *initial* grievance." (Doc. 93-4 at 5) (emphasis added). Given this requirement, the Third Circuit has found that a district court's dismissal of a claim on exhaustion grounds is proper where the inmate failed to request monetary relief in his initial grievance. *Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (non-precedential). The *Wright* court reasoned that "the Prison's policy required [the inmate] to specifically request monetary relief in his initial grievance. Because [he] failed to do so, he defaulted his claim for money damages." *Id.*

Following *Wright*, district courts within this circuit have similarly held that an inmate procedurally defaults any claim for money damages if he does not specifically request monetary relief in his initial grievance. *See e.g.*, *Brockington v. Garcia*, 2022 WL 3142612, at \*6 (M.D. Pa. Aug. 5, 2022) ("As Brockington failed to request any specific relief in his initial grievance, let alone monetary damages, he may not pursue the claims alleged in his complaint in federal court."); *Hobson v. Tiller*, 2021 WL 2191282, at \*8 (W.D. Pa. May 6, 2021) ("Failure to request monetary compensation in an initial grievance means that a court must dismiss a

9

legal claim in federal court seeking money damages[.]") (collecting cases); *Tillery v. Wetzel*, 2019 WL 480485, at *6 (M.D. Pa. Feb. 7, 2019).

Here, a review of Cramer's grievance No. 958852 indicates that Cramer failed to request monetary relief in his initial grievance. (Doc. 93-3). In his initial grievance, Cramer's only requested relief was to be granted access to the law library in the RHU. (*Id.* at 2). This is fatal to any claim Cramer asserts for monetary damages. Accordingly, because it is undisputed that McClain did not request monetary relief in his initial grievance regarding his Eighth Amendment claim, we find that any claim for monetary damages is unexhausted and will be dismissed.[3]

### 2. Cramer's Retaliation Claim Fails as a Matter of Law.

More fundamentally, we find that Cramer has failed to establish a violation of his First Amendment rights. A prisoner alleging a claim of First Amendment retaliation must show (1) that he engaged in constitutionally protected conduct; (2) that he suffered an "'adverse action' at the hands of prison officials"; and (3) that his constitutionally

---

[3] We further note that Magistrate Judge Carlson found that any request for compensatory damages in this matter was barred by the PLRA because Cramer failed to allege any physical injury with respect to his retaliation claim. (Doc. 49 at 23 n.4).

10

protected activity was "a substantial or motivating factor" in the decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to show "that it would have taken the same disciplinary action even in the absence of the protected activity." *Id.* (citing *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). In the prison context, the Third Circuit has recognized that "the task of prison administration is difficult," and thus, has reasoned that deference must be given to prison officials' decisions. *Id.* at 334. Accordingly, prison officials may prevail on a plaintiff's retaliation claim if they can show that the adverse action was taken "for reasons reasonably related to a legitimate penological interest." *Id.*

Here, it is undisputed that Cramer engaged in protected activity under the First Amendment by filing lawsuits. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). However, we conclude that Cramer has not sufficiently shown that he was subjected to an adverse action, or that his legal activity was a substantial or motivating factor in the decision to deny him physical access to the law library.

To show an adverse action, a plaintiff must establish that the defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). While "the denial of access to the law library may constitute an adverse action," *Williams v. Nyberg*, 2023 WL 4628378, at *5 (W.D. Pa. May 10, 2023) (collecting cases), in this case, Cramer cannot show that he was denied access to the law library. In fact, Cramer does not dispute that the DOC provided him with an alternative means of accessing the law library's legal materials through the RHU lieutenant; he simply claims that the alternative means were inadequate. *See e.g.*, *Fletcher v. Little*, 5 F. Supp. 3d 655, 662 (D. Del. 2013) ("All that is required is that plaintiff at least have access to a prison paralegal or paging system by which to obtain legal materials."). Accordingly, we cannot conclude that the denial of physical access to the law library constitutes an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225.

Further, Cramer has not shown that his protected activity was a substantial or motivating factor in the defendants' decision to utilize an

alternative process for Cramer to access legal materials. While Cramer directs us to the allegations in the amended complaint, in which he claims the defendants specifically referenced his tendency to sue when he inquired about law library access, "[a] pro se plaintiff may not . . . rely solely on his complaint to defeat a summary judgment motion." *Layton v. Smith*, 2022 WL 17832548, at *3 (W.D. Pa. Dec. 21, 2022) (citing *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(e)). Cramer has failed to set forth any evidence showing that these defendants denied him physical access to the law library because he filed lawsuits. To the contrary, the defendants' exhibits indicate that Innis, Contreras, and Goyne were interviewed and specifically denied that they told Cramer he would not have access to the library. (Doc. 93-3). Rather, the defendants informed Cramer he would have to request materials through the RHU lieutenant. (*Id.*).

In any event, even if we were to conclude that Cramer has set forth a *prima facie* case of retaliation, the defendants have presented evidence showing that they would have taken the same action regardless of Cramer's protected activity. The response to Cramer's grievance and appeals indicate that the DOC required Cramer to use the alternative

13

system of requesting materials through the RHU lieutenant due to his recent assault on a staff member. (Doc. 93-3). The initial review response specifically indicated that these measures were being taken pursuant to DOC policy 6.5.1, authorizing alternative methods of providing inmates with legal materials if there is an immediate security concern. (*Id.* at 3). We conclude that given Cramer's institutional misconduct history, including his assault on a staff member just prior to his transfer to SCI Dallas, the defendants have established a legitimate penological reason for providing Cramer with an alternative method of accessing the law library and denying him physical access.

While Cramer attempts to challenge this same-decision defense by claiming that he is entitled to other privileges, such as yard and shower, courts in this circuit have held that a prisoner may not challenge the prison officials' decision as pretextual. *See Williams*, 2023 WL 4628378, at *4; *Holbrook v. Kingston*, 2013 WL 504816, at *2 (W.D. Pa. Feb. 12, 2013) (recognizing that "the Third Circuit has not recognized pretext in retaliation claims arising in a prison setting."). As one court has reasoned, prohibiting assertions of pretext in this context "is consistent with the Court's policy against undue entanglement in prison

14

disciplinary matters." *Williams*, 2023 WL 4628378, at *4. Thus, Cramer's assertions of pretext cannot be used to cast doubt on the defendants' same-decision defense. Rather, we conclude that the plaintiff has failed to establish a genuine issue of material fact with respect to his retaliation claim. Accordingly, we will grant the defendants' motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 92) will be GRANTED.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge

Date: April 10, 2024